UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AZARNOUSH NAZARI,

                Plaintiff,

        v.

SUSAN QUINTANA,

                Defendant.

22-CV-9812 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Azarnoush Nazari, an Iranian national and lawful permanent resident of the United States, brought this action seeking review of the denial of her application for naturalization by U.S. Citizenship and Immigration Services ("USCIS"). After Nazari applied for naturalization pursuant to Section 319(a) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1430(a), which permits the spouses of U.S. citizens to obtain citizenship on an expedited timeline, her U.S.-citizen husband passed away. Now before the Court is Defendant's motion to dismiss. Although the circumstances giving rise to this action are tragic, Nazari's claims are foreclosed as a matter of law. Plain language interpretations of § 1430(a) conclusively establish that, given her husband's death, Nazari is no longer the "spouse of a U.S. citizen" and thus cannot naturalize pursuant to that section's expedited process. *See, e.g., In re Yao Quinn Lee*, 480 F.2d 673, 675 (2d Cir. 1973) (holding that the statute "quite plainly requires marriage to a citizen not only for three years prior to filing the petition, but also at the time of naturalization"). Accordingly, for the reasons set forth below, Defendant's motion is granted.

    Notably, however, while the Court agrees with USCIS that Nazari is unable to obtain expedited naturalization under § 1430(a), she remains eligible to file for naturalization under the

standard timeframe available to all lawful permanent residents. Based upon a review of the record, she is currently able to file an N-400 application under 8 U.S.C. § 1427(a), and became eligible to do so on April 21, 2023, 90 days before she met the five-year residency requirement.

## BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of the present motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

Plaintiff Azarnoush Nazari is an Iranian national and lawful permanent resident of the United States; she lives in New York County where she is employed as a Program Manager. Compl. ¶ 2. In December 2015, Nazari married Cody William Broderick, a U.S. citizen, in New York City. *Id*. ¶ 5. On July 20, 2018, Nazari was lawfully admitted to the United States for permanent residence, *id*. ¶ 7, and, on May 5, 2021, she applied for naturalization under Section 319(a) of the INA, *see* 8 U.S.C. § 1430(a), as the spouse of a U.S. citizen, *id*. ¶ 8. There is no dispute that Nazari and Broderick lived together as a married couple for nearly six years until Broderick's untimely death on September 28, 2021, while Nazari's application for naturalization remained pending. *Id*. ¶ 6.

On January 31, 2022, Nazari's application was denied by USCIS. *Id*. ¶ 9. In the denial, she was informed that "[she] ha[d] not been married to [her] U.S. citizen spouse for the requisite time period," given that Broderick passed away in September 2021. *Id*. ¶ 9. On March 3, 2022, Nazari filed a request for a hearing, *id*. ¶ 10, and on October 21, 2022, USCIS denied the request for the same reasons it had previously given in denying Nazari's application for naturalization, *id*. ¶ 11. Nazari thereafter filed this action on November 17, 2022. *See* Dkt. 1.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept as true all factual allegations and draw all reasonable inferences in Plaintiffs' favor, *see Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), but it need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). "At the motion-to-dismiss stage, the Court's review is limited to the facts as-pleaded by the plaintiff, documents appended to or referred to in the complaint, and to matters of which judicial notice may be taken." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (cleaned up); *see also* Fed. R. Civ. P. 10(c) ("[A]n exhibit to a pleading is part of the pleading for all purposes.").

## DISCUSSION

To be eligible for naturalization, an applicant must satisfy several requirements set forth in both the INA and associated regulations. *See, e.g., Khawaja v. Mueller*, 2012 WL 4739604, at *2 (S.D. Tex. Oct. 3, 2012). The parties here agree that the only one at issue is whether Nazari met the residence requirement relevant to her application. *See* 8 U.S.C. § 1427(a). Typically, to be eligible for naturalization, an applicant must have lived lawfully and continuously in the United States as a lawful permanent resident for five years prior to filing their application. *See id.* Where a foreign national is married to a U.S. citizen, however, they may obtain expedited naturalization—

that is, such an applicant need only have lived lawfully and continuously as a lawful permanent resident for three years prior to filing their application, provided that they were "living in marital union" with the citizen spouse throughout the three-year period. *See* 8 U.S.C. § 1430(a); *see also* 8 C.F.R. § 319.1(a)(3) (DHS regulation providing the same). Because Nazari would have satisfied the three-year residency requirement if her husband had been living at the time her application was processed, the question before this Court is whether Nazari remained eligible for expedited naturalization under 8 U.S.C. § 1430(a) notwithstanding her husband's death in September 2021.

Unfortunately, the Court must conclude that she did not. The statutory language of § 1430(a)—as interpreted by the Second Circuit, other district courts, and DHS in its own regulations—forecloses Ms. Nazari's claim that USCIS erred in denying her application. As explained below, because her husband was no longer living at the time her naturalization application was processed, Ms. Nazari was not eligible for expedited naturalization. The INA provides, in relevant part:

> any person whose spouse is a citizen of the United States … may be naturalized upon compliance with all requirements of this subchapter … if such person immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years, and during the three years immediately preceding the date of filing his application has been living in marital union with the citizen spouse.

8 U.S.C. § 1430(a). The Second Circuit has held that this "statutory language itself … quite plainly requires marriage to a citizen not only for three years prior to filing the petition, but also *at the time* of naturalization." *In re Yao Quinn Lee*, 480 F.2d 673, 675 (2d Cir. 1973) (emphasis added). In that case, the petitioner, a citizen of Hong Kong and lawful permanent resident of the United States, had filed an application for naturalization with the then-controlling agency, the Immigration and Naturalization Service ("INS"). *Id*. at 674. After the INS recommended that his application

4

be denied for reasons unrelated to whether he met the residency requirement as the spouse of a citizen, the petitioner challenged the denial in federal district court, which entered judgment against him; critically, while his appeal before the Second Circuit was pending, his wife secured a "final decree of divorce." *Id.* at 675. The Court of Appeals refused to adjudicate his challenge to the denial of his naturalization application, reasoning that he "no longer f[ell] within the literal purview of section 319(a) [(codified at 8 U.S.C. § 1430(a))] and [wa]s ineligible for naturalization under that section." *Id.* In short: because he was no longer married to a U.S. citizen, the Circuit held that he was not eligible for expedited naturalization under the INA. *See id.*

In the time since, district courts have uniformly held that "[i]t is undisputed that [§ 1430(a)] requires marriage at the time naturalization is granted." *Ali v. Smith*, 39 F. Supp. 2d 1254, 1256 (W.D. Wash. 1999); *see also Paiva v. Curda*, 2017 WL 924457 (C.D. Cal. Mar. 8, 2017) ("Because the undisputed facts show that Paiva is no longer married to [the citizen spouse], he can no longer qualify" for expedited naturalization.); *Alenazi v. USCIS*, 2010 WL 3988744 (S.D. Cal. Oct. 12, 2010) ("[T]he INA requires an applicant who chooses to apply pursuant to the three-year residency requirement under Section 1430(a) to remain to be married to the United States citizen at the time of actual naturalization, and not just at the time of filing the application."). And while each of these decisions, like *In re Yao Quinn Lee*, concerned divorce from a U.S. citizen spouse during the pendency of a naturalization application, as Plaintiff rightly points out, *see* Opp. at 11–12, the reasoning they adopted did not hinge on *why* a marital union had terminated, but rather on the simple fact that a marriage no longer existed at the time the application was processed. *See Alenazi*, 2010 WL 3988744, at *3 ("[P]laintiff is statutorily ineligible for naturalization because he was not a 'person whose spouse is a citizen of the United States' at the time his naturalization determination was made."). However unfortunate it is that the marriage here ended purely by

5

"happenstance of death," Opp. at 10, there does not appear to be any case law which would support drawing a distinction in the applicability of § 1430(a) based on whether the end of a marriage was voluntary in nature.

Moreover, as a matter of first principles, this interpretation of the INA is supported by a plain text reading of the statute. Specifically, the INA's use of the present tense—"any person whose spouse *is* a citizen of the United States," 8 U.S.C. § 1430(a)—indicates that eligibility ends when the applicant is no longer the legal spouse of a citizen. "Congress' use of a verb tense is significant in construing statutes," *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010), and, here, Congress specifically elected to adopt language using the present tense. *See also Carr v. United States*, 560 U.S. 438, 447–49 (2010) (relying on Congress's use of the present tense); *Barscz v. Dir., Office of Workers' Comp. Programs*, 486 F.3d 744, 750 (2d Cir. 2007) (reasoning the "plain meaning" of the statute was that it did not apply in the past tense, given that "the words refer *only* to the present tense") (emphasis in original). And even if a plain text reading weren't clear, as it is here, the "most likely Congressional intent" in enacting the expedited naturalization process—as another court in this district found—was to "reward" a "close *continued* marital association" with the benefit of expedited naturalization. *In re Bashan*, 530 F. Supp. 115, 120 (S.D.N.Y. 1982) (emphasis added).

But even to the extent that the Court were to find any ambiguity in interpreting § 1430(a), DHS's reasonable, on-point construction of the statute in its own regulations would be entitled to *Chevron* deference. *See Chevron USA, Inc. v. Nat. Res. Def. Council, Inc*, 467 U.S. 837, 842–43 (1984) (if Congress has not "directly spoken to the precise question at issue," a court evaluates whether an "agency's answer is based on a permissible construction of the statute," and, if so, defers to the agency interpretation). Here, the Agency promulgated a regulation which directly

provides: "[a] person is ineligible for naturalization as the spouse of a United States citizen under section 319(a) of the Act [(codified at 8 U.S.C. § 1430(a))] if, before or after the filing of the application, the marital union ceases to exist due to death or divorce . . . ." 8 C.F.R. § 319.1(b)(2)(i). Because the Court finds that the regulation's straightforward definition is a permissible construction of the statute—indeed, one uniformly adopted by every federal court to consider the question—it is entitled to deference to the extent that the statute does not speak for itself. *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 507 (2d Cir. 2017) (observing, when an agency promulgates regulations interpreting statutes that it is entrusted to administer and execute, such regulations are entitled to deference); *see also New York v. FERC*, 783 F.3d 946, 954 (2d Cir. 2015) (noting that, in deciding whether an agency made a permissible construction of a statute, the "inquiry is deferential, asking only whether the agency's interpretation is 'reasonable,' while 'respecting legitimate policy choices' made by the agency") (quoting *Chevron*, 467 U.S. at 866).

Nazari makes several arguments for her preferred reading of § 1430(a), but none are availing. First, she argues that later amendments to the INA demonstrate that an alien remains an immediate relative of a decedent spouse after their death, and therefore would not be disqualified from receiving immigration benefits through marriage. *See* Opp. at 5–8. But this argument paints with too broad a brush. Rather, the amendments to which Nazari points expressly apply only to specific subsections. Section 101 of the Immigration Act of 1990, for instance, relates only to obtaining immigrant visas and is entirely unrelated to naturalization:

> an alien who was the spouse of a citizen of the United States and was not legally separated from the citizen at the time of the citizen's death … shall be considered, *for purposes of this subsection*, to remain an immediate relative after the date of the citizen's death but only if the spouse files a petition under section 1154(a)(1)(A)(ii) of this title within 2 years after such date and only until the date the spouse remarries.

7

8 U.S.C. § 1151(b)(2)(A)(i) (emphasis added).[1]  And as to Nazari's point that Congress amended other sections of the INA to ensure that certain benefits may be extended to widows and widowers, she succeeds only in demonstrating that Congress knows how to amend the INA to account for the former spouses of deceased citizens when it wants to—something it has not done for § 1430(a). Rather, in the nearly-five decades since the Second Circuit's plain text reading of § 1430(a) in *In re Yao Quinn Lee*, and even since DHS promulgated its own definition in accord, Congress has left that section significantly unaltered, even as it engaged in significant overhauls of the INA in 1990, 1991, and 2003.[2]  *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220 (2001) ("[I]nterpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law."); *see also Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without a change.").

Second, Nazari argues that the "great weight of judicial authority has held that death does not terminate spousehood" under the INA.  Opp. at 12.  Yet, every case that Nazari cites in support involves sections of the INA far afield from expedited naturalization pursuant to § 1430(a).  *See Freeman v. Gonzalez*, 444 F.3d 1031 (9th Cir. 2006) (involving removal); *Neang Chea Taing v. Napolitano*, 567 F.3d 19 (1st Cir. 2009) (involving the "immediate relative" issue for visa petitions); *Lockhard v. Napolitano*, 573 F.3d 251 (6th Cir. 2009) (same); *Williams v. Sec'y, U.S.*

---

[1]  Notably, apart from its express language cabining its applicability, if anything, this amendment to the INA demonstrates that the death of the relevant U.S. citizen would, in the normal course, terminate a spousal relationship—by describing the case of an alien "who *was the spouse* of a citizen."  *Id.* (emphasis added).

[2]  *See, e.g.*, Immigration Act of 1990, 101 Pub. L. No. 649, 104 Stat. 4978 (codified at 8 U.S.C. § 1151(b)(2)(A)(i)); Act of Dec. 12, 1991, 102 Pub. L. No. 232, 105 Stat. 1742 (codified at 8 U.S.C. § 1101); Act of Nov. 24, 2003, 108 Pub. L. No. 136, 117 Stat. 1392 (codified at 8 U.S.C. § 1439).

*Dep't of Homeland Sec.*, 741 F.3d 1228 (11th Cir. 2014) (same); *Richards v. Napolitano*, 642 F. Supp. 2d 118 (E.D.N.Y. 2009) (involving the "immediate relative" definition for lawful permanent residency); *Robledo v. Chertoff*, 658 F. Supp. 2d 688 (D. Md. 2009) (same); *Hanford v. Napolitano*, 2009 WL 3073956 (W.D. Tex. Sept. 17, 2009) (same). None of those decisions considered relief of the form Nazari seeks here—expedited naturalization. Instead, as addressed previously, every federal court that has considered whether § 1430(a) applies to those whose marriages to citizen spouses had previously ended concluded that it does not.

Finally, Nazari argues that the language of § 1430(a) unambiguously weighs in her favor, and that, to the extent it does not, no deference should be afforded to DHS's regulation codified at 8 C.F.R. § 319.1(b)(2)(i). *See* Opp. at 9. She opens this argument by suggesting that "spouse" can mean only one thing under the INA, namely, "a party to a marriage even after one of the partners' death," *id*. at 9, but that is simply not the case. Rather, as the court in *Richards* explained, uses of the term "spouse" vary greatly throughout the statute—"Congress at times clarified the type of spouse to which other INA provisions refer by employing the term 'surviving spouse,'" 642 F. Supp. 2d at 129—and it therefore cannot be that only one unambiguous definition of the term applies throughout the Act. And while Nazari asserts that DHS's regulation should be given no deference, she does not engage with the two-step process set forth by *Chevron*, offering the Court nothing to conclude that the regulation codified at 8 C.F.R. § 319.1(b)(2)(i) is not a permissible construction of the statute.

In sum: because Nazari was no longer married to a U.S. citizen at the time her naturalization application was processed by USCIS, she cannot satisfy the requirements of § 1430(a) or its related regulations. While she is unable to naturalize under that section's expedited timeframe, however, Nazari is now eligible to seek naturalization under the standard five-year timeframe. *See Berenyi*

*v. Dist. Dir., INC*, 385 U.S. 630, 637 (1967). In view of the equities presented by Nazari's unfortunate situation following her husband's death—and given that no one disputes that she would have been eligible for naturalization in 2021 if her husband had remained living—the Court is confident that USCIS will process any amended application expeditiously.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 22.

SO ORDERED.

Dated:   July 24, 2023
         New York, New York

_____
Hon. Ronnie Abrams
United States District Judge